IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD, ILLINOIS

| | | |
|---|---|---|
| Estate of PATRICK BURNS, deceased | ) | |
| By Richard Burns, Executor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 3:11-cv-03020 |
| | ) | |
| NEIL WILLIAMSON, | ) | JURY TRIAL DEMANDED |
| AS SHERIFF OF SANGAMON COUNTY, | ) | |
| in his official capacity; | ) | |
| LIEUTENANT BRIAN BRESSAN, | ) | |
| in both his official capacity and in his | ) | |
| individual capacity; | ) | |
| DEPUTY ANDREW BRASHEAR, | ) | |
| in both his official capacity and in his | ) | |
| individual capacity; | ) | |
| DEPUTY MICHAEL HARTH, | ) | |
| in both his official capacity and in his | ) | |
| individual capacity; | ) | |
| DEPUTY JOHN OSMER, | ) | |
| in both his official capacity and in his | ) | |
| individual capacity; | ) | |
| DEPUTY TERRENCE RODERICK, | ) | |
| in both his official capacity and in his | ) | |
| individual capacity; | ) | |
| AND OTHER UNIDENTIFIED SANGAMON | ) | |
| COUNTY DEPUTIES, | ) | |
| in both their official capacity and in their | ) | |
| individual capacity; and, | ) | |
| SANGAMON COUNTY, | ) | |
| LIFESTAR AMBULANCE SERVICE, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Serve:    Michael Jones | ) | |
|          Registered Agent | ) | |
|          217 South Locust St. | ) | |
|          Centralia, IL 62801 | ) | |
| | ) | |
| | ) | |

JAMIE ROMPOT, an individual,       )
                                            )

Serve at:      POE                      )
                    Lifestar Ambulance      )
                    336 N. 2nd Street      )
                    Springfield, IL 62702    )
and,                                    )
                                            )

BARBARA GUFFEY, an individual,     )
                                            )

Serve at:      POE                      )
                    Lifestar Ambulance      )
                    336 N. 2nd Street      )
                    Springfield, IL 62702    )
                                            )
                    Defendants.

## SECOND AMENDED COMPLAINT

COMES NOW Plaintiff, by and through counsel, and for his Second Amended Complaint against Defendants, jointly and severally, states and alleges as follows:

### NATURE OF CASE

1.     This suit arises from violations of the civil rights of Patrick Burns, in violation of 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments of the United State Constitution, the Illinois State Constitution and Illinois law.

### JURISDICTION

2.     This action is brought pursuant to 42 U.S.C. § 1983 with ancillary state law claims. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1332 and 1367.  Plaintiff demands a trial by jury.

## VENUE

3.      The violation of civil rights alleged herein was committed in the City of Springfield, Sangamon County, State of Illinois, which is within and this action properly lies in the United States District Court for the Central District of Illinois, Springfield Division.

## PARTIES

4.      Decedent Patrick Burns was a resident of the City of Springfield, Sangamon County, State of Illinois, as of the date of the occurrences described herein and as of the date of his death on January 28, 2010.

5.      Plaintiff is the Executor of the Estate of Patrick Burns and is the surviving brother of Patrick Burns whose wrongful death was caused by the Defendants.  Plaintiff Richard Burns is a resident of Volusia County, State of Florida.

6.      Defendants are Neil Williamson, as Sheriff of Sangamon County, who is legally responsible to control and operate the Sangamon County Sheriff's Department; and the following individuals who are employees and agents of the Sheriff working in the Sheriff's Department: Lieutenant Brian Bressan, Deputy Andrew Brashear, Deputy Michael Harth, Deputy John Osmer, Deputy Terrence Roderick, and other Unidentified Sangamon County Deputies.

7.      Defendant Sangamon County funds the Sangamon County Sheriff's Department and is named as a necessary party to this Complaint seeking damages from Neil Williamson as Sheriff of Sangamon County, an independently elected county officer in an official capacity.

8.      All individual deputies identified as Defendants herein were, at all times relevant to this Complaint, employees / agents of the Sheriff of Sangamon County or Sangamon County Sheriff's Department.

9.      All individual Defendants were residents of Sangamon County, State of Illinois at all times relevant to this Complaint.

10.     All individual Defendants, with the exception of Sheriff Neil Williamson, are named in their official capacities, but sued as individuals herein.  Defendant Sheriff Neil Williamson is sued only in his official capacity as Sheriff of Sangamon County, Illinois.

## BACKGROUND FACTS

11.     On or about January 23, 2010, Defendants Bressan, Brashear, Harth, Osmer, Roderick, and other unidentified Sangamon County deputies were dispatched to a report of a home invasion at 1401 North Wesley in Springfield, Illinois.  When deputies arrived, they encountered an injured and bleeding Patrick Burns lying calmly in a drainage ditch at that location; the caller informed the deputies that Patrick Burns was the perpetrator of the home invasion.

12.     Patrick Burns was compliant with deputies' requests and informed deputies that he had been drinking and was on prescription medication.

13.     Deputies also went to Patrick Burns' home a couple blocks away to interview his fiancée, who informed the deputies that Patrick Burns suffered from psychiatric conditions and was on prescription medication and had been drinking.

14.     Defendant deputies made no attempt to arrest Patrick Burns or charge him with a crime.  Defendant Deputy Brashear began to take pictures of Patrick Burns, which aggravated Patrick Burns and the situation accelerated to a struggle.

15.     Patrick Burns, who was unarmed, was surrounded by at least four deputies (Defendant Deputies Brashear, Harth, Osmer, and Roderick), at least two of which (Defendant Deputies Osmer and Roderick) had their hands on his extremities.  Despite this, Defendant Deputy Brashear chose to repeatedly deploy his Taser on Patrick Burns instead of lending a third set of hands to quickly

subdue Patrick Burns.

16.     Despite more deputies and law enforcement personnel arriving, other deputies began deploying their Tasers as well.  Defendant Deputies Brashear, Osmer, Roderick, Harth, and possibly other deputies deployed their Tasers on Patrick Burns.  At this time, there were at least six law enforcement personnel (Defendant Deputies Brashear, Harth, Osmer, and Roderick, and Lieutenant Bressan, and an off-duty Illinois Department of Corrections Officer) with Patrick Burns, who was already in handcuffs.

17.     Defendant Deputies chose to place handcuffs around Patrick Burns' ankles and then connect those handcuffs behind his back to the ones around his wrists, effectively "hogtying" Patrick Burns.  Despite Patrick Burns already being handcuffed, Defendant Deputy Harth used "control strikes" against Patrick Burns as the Defendant Deputies were trying to maneuver Patrick Burns into the awkward and unnatural "hogtied" position.

18.     Despite being "hogtied", Defendant Deputies continued to deploy their Tasers on Patrick Burns.  During the incident, at least four (4) Tasers were deployed for a total of at least twenty-one (21) times against Patrick Burns.

19.     When Defendant Deputies finally allowed ambulance personnel to tend to the injuries Patrick Burns sustained in the incident, which included multiple abrasions, contusions and lacerations of the face, hands, wrists, ankles, chest and back and epidural hemorrhage of the spinal cord, they would not permit the ambulance personnel to place Patrick Burns in the proper restraints for transport in the ambulance and instead kept Patrick Burns "hogtied" and in the prone position.

20.     Defendant Deputies Osmer and Roderick rode with Patrick Burns in the ambulance on the way to the hospital and refused to allow ambulance personnel to properly treat Patrick Burns and properly position him to maintain his airway and monitor his vitals.

21.     Upon arrival at the hospital, the medical staff noted that they could not locate Patrick Burns' pulse, and after all of the handcuffs were removed, CPR was begun by the medical staff, but it was too late and Patrick Burns could not be revived.

22.     Patrick Burns remained on life support and died in the hospital on January 28, 2010, an autopsy performed by a forensic pathologist retained by Patrick Burns' family was conducted and the forensic pathologist opined that Patrick Burns suffered from multiple abrasions, contusions and lacerations of the face, hands, wrists, ankles, chest and back, epidural hemorrhage of the spinal cord, pulmonary congestion and edema, and cerebral edema due to anoxic brain injury and death was due to anoxic brain injury due to restraint in a prone position while hogtied.  Significant contributing factors in his death were physical subdual, multiple applications of Taser devices and chronic cocaine abuse.

23.     At all times mentioned herein, the Sangamon County Sheriff's Department had written policies regarding arrest procedures, including the use of Tasers and the use of force.

24.     Unwritten customs and accepted practices have developed at the Sangamon County Sheriff's Department over time, some of which reflect the accepted interpretation of the written policies. Some of these customs and practices (as in use of Tasers and other force) were accepted and approved by the Sangamon County Sheriff's Department administration and supervisors as consistent with the written policies.  Other customs and practices relating to the use of Tasers and other force have been considered violations of the written policies by Sangamon County Sheriff's Department administration; however, few, if any, steps have been taken to correct the violations of the Sangamon County Sheriff's Department's own written policies.  Accordingly, the violation of the Sangamon County Sheriff's Department's written policies relating to the use of Tasers and other force have become accepted practices and customs for the Sangamon County Sheriff's Department.

25.     Whether or not the customs and practices are deemed violations of the Sangamon County Sheriff's Department's written policies, the customs and practices described in the counts below constitute deliberate indifference to the risks of harm to individuals (including Patrick Burns) by both supervisory and non-supervisory employees and agents of the Sheriff and are in direct violation of Patrick Burns' constitutional rights.

26.     As of and prior to January, 2010, the Sheriff, in his official capacity, was ultimately responsible for administration of the policies, customs and practices described herein.

## COUNT I

**FEDERAL CLAIM FOR CRUEL AND UNUSUAL TREATMENT AND EXCESSIVE USE OF FORCE BY DEFENDANTS LIEUTENANT BRESSAN, DEPUTY BRASHEAR, DEPUTY HARTH, DEPUTY OSMER, DEPUTY RODERICK, AND OTHER UNIDENTIFIED SANGAMON COUNTY DEPUTIES.**

27.     Plaintiff incorporates by reference as if fully set forth herein, each and every allegation contained in all paragraphs and subparagraphs hereinabove.

28.     During Patrick Burns' unlawful arrest and subsequent detainment, the above named Defendants, acting under the color of state law, intentionally and/or recklessly mistreated Patrick Burns and used, or allowed to be used, much greater force than was necessary to preserve the peace and maintain order or to overcome any resistance to authority because Patrick Burns was not threatening with a weapon and Defendants were in no imminent danger.  Thus, the force used by the individual Defendants was "excessive force" under the circumstances.

29.     The acts described herein constitute cruel and unusual punishment.

30.     Under the circumstances that existed on January 23, 2010, Defendants used, and allowed to be used, greater force than was necessary in handling Patrick Burns, to wit:

a.     Four or more Tasers were deployed at least twenty-one times on Patrick Burns;

b.     Handcuffs were deployed in a manner to effectively "hogtie" Patrick Burns;

c.     Tasers were deployed and significant pressure was applied to Patrick Burns' torso while he was laying face down "hogtied" on the muddy ground;

d.     Defendants kept Patrick Burns in a "hogtied" position while prone in the ambulance on the way to the hospital, hampering his airway and preventing ambulance personnel from adequately treating Patrick Burns and monitoring his airway and vitals.

31.     As a direct and proximate result of the Defendants' actions, including the actions of other unidentified Sangamon County Sheriff's Deputies, Patrick Burns' heart and respiration ceased, and he subsequently died due to anoxic brain injury due to restraint in a prone position while hogtied.

32.     All Individual Defendants acted under color of state law and recklessly and intentionally used excessive force and/or unreasonable force in arresting and detaining Patrick Burns and Defendant Deputies Osmer and Roderick recklessly and intentionally used excessive force and/or unreasonable force in supervising his transport to a local hospital for medical evaluation and treatment of his injuries sustained by said arrest and detainment, in violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution to be free from unreasonable seizures, in violation of 42 U.S.C. § 1983.

33.     The actions of Defendants described herein were done while Patrick Burns was in their custody and were done with malice and/or reckless indifference to Patrick Burns' federally protected rights.

34.     As a result of Defendants' actions, Patrick Burns' estate sustained damages in excess of $75,000.00.

WHEREFORE, Plaintiff Estate of Patrick Burns, by Richard Burns, Executor of the Estate of Patrick Burns, deceased, prays for judgment in favor of the estate and against Defendants for the following relief:

       a.     Compensatory damages in an amount to be determined by a jury;

       b.     Punitive damages in an amount to be determined by a jury;

       c.     Plaintiff's reasonable attorney's fees and costs; and,

       d.     Such further and other relief that this Court deems just and proper.

## COUNT II

**FEDERAL "MONELL" CLAIM FOR CRUEL AND UNUSUAL TREATMENT AND EXCESSIVE USE OF FORCE AGAINST DEFENDANTS NEIL WILLIAMSON AS SHERIFF OF SANGAMON COUNTY AND SANGAMON COUNTY**

35.     Plaintiff incorporates by reference as if fully set forth herein, each and every allegation contained in all paragraphs and subparagraphs hereinabove.

36.     Defendants have a pattern and practice of deploying Taser guns without providing their deputies sufficient training regarding their use.

37.     Defendants have a pattern and practice of encouraging the deployment of Taser guns when such use of force is not necessary or justified.

38.     Defendants have a pattern and practice of deploying Taser guns knowing that the use of such weapons can cause permanent and serious bodily harm, especially when combined with force and restraint which restricts respiration.

39.     Defendants have a pattern and practice of not disciplining its deputies who do not use Taser guns appropriately.

40.     The policies and procedures of Defendants caused Patrick Burns to be deprived of his life in violation of the Fourth and Fourteenth Amendments of the United States Constitution as well as in violation of the Constitution of the State of Illinois and Illinois law.

41.     As a result of Defendants' actions, Patrick Burns' estate sustained damages in excess of $75,000.00.

WHEREFORE, Plaintiff Richard Burns, Executor of the Estate of Patrick Burns, deceased, prays for judgment in favor of the estate and against Defendant Neil Williamson as Sheriff of Sangamon County and Defendant Sangamon County for the following relief:

    a.     A declaration that the acts and practices described of herein are in violation of 42 U.S.C. § 1983;

    b.     An injunction to permanently restrain these violations of 42 U.S.C. § 1983;

    c.     Plaintiff's reasonable attorney's fees and costs;

    d.     Compensatory damages in an amount to be determined by a jury;

    e.     Plaintiff's reasonable attorney's fees, costs, and prejudgment interest as provided by 42 U.S.C. § 2000; and,

    f.     Such further and other relief that this Court deems just and proper.

## COUNT III

**STATE CLAIM FOR WRONGFUL USE OF EXCESSIVE FORCE
AGAINST ALL DEFENDANTS**

42.     Plaintiff incorporates by reference as if fully set forth herein, each and every allegation contained in all paragraphs and subparagraphs hereinabove.

43.     At all times relevant to this claim, Defendant Lieutenant Bressan, Defendant Deputy Brashear, Defendant Deputy Harth, Defendant Deputy Osmer, Defendant Deputy Roderick were employees and agents of the Defendant Neil Williamson as Sheriff of Sangamon County, Illinois.

44.     On January 23, 2010, Defendant Lieutenant Bressan, Defendant Deputy Brashear, Defendant Deputy Harth, Defendant Deputy Osmer, Defendant Deputy Roderick wrongfully used excessive force against Patrick Burns, to wit:

    a.      Four or more Tasers were deployed at least twenty-one times on Patrick Burns;

    b.      Handcuffs were deployed in a manner to effectively "hogtie" Patrick Burns;

    c.      Tasers were deployed and significant pressure was applied to Patrick Burns' torso while he was laying face down "hogtied" on the muddy ground;

    d.      Defendants kept Patrick Burns in a "hogtied" position while prone in the ambulance on the way to the hospital, hampering his airway and preventing ambulance personnel from adequately treating Patrick Burns and monitoring his airway and vitals.

45.     In using said excessive force described herein, Defendants had no privilege, qualified immunity, or official immunity because Defendants acted in bad faith and with malice with an actual intent to cause injury.

46.     The force described herein used by individual Defendants upon Patrick Burns was not reasonably necessary force to preserve the peace and maintain order or to overcome any resistance to authority because Patrick Burns was not threatening with a weapon and Defendants were in no imminent danger.  Thus, the force used by the individual Defendants was "excessive force" under the circumstances.

47.     As a direct and proximate result of the foregoing wrongful acts which were willful or wanton on the part of said Defendants, Patrick Burns suffered physical injury and death.

48.     Patrick Burns' next of kin has, and will in the future, suffered primary losses as a result of Patrick Burns' death.

49.     Patrick Burns' next of kin, has also suffered non-economic losses and damages because of decedent's death, including, but not limited to, material services, companionship, happiness, felicity, and damages for grief, sorrow and mental suffering pursuant to 740 ILCS 180/2.

50.     As a result of Defendants' actions, Patrick Burns' estate sustained damages in excess of $75,000.00.

**WHEREFORE**, Plaintiff Richard Burns, Executor of the Estate of Patrick Burns, deceased, prays for judgment against Defendants in an amount over Seventy-Five Thousand Dollars ($75,000.00) in such sum which is fair and reasonable, for punitive damages against the individually named Sheriff's deputies and Unidentified Sangamon County Sheriff's deputies only and not against the other Defendants, for Plaintiff's costs incurred and expended herein, and for such further and other relief this Court deems just and proper.

## COUNT IV

### STATE CLAIM FOR SURVIVAL ACT AND EXPENSES
### AGAINST ALL DEFENDANTS

51.     Plaintiff incorporates by reference as if fully set forth herein, each and every allegation contained in all paragraphs and subparagraphs hereinabove.

52.     This Count is brought pursuant to the Illinois Survival Act, 755 ILCS 5/27-6 for the medical, funeral and burial expenses and for the pain, suffering, abuse, and disability experienced by Patrick Burns prior to his death.

53.     As a direct and proximate result of one or more of the foregoing willful and wanton acts or omissions, Patrick Burns experienced pain and suffering, punishment, loss of consciousness, loss of autonomic respiratory and pulmonary functions, hospitalization, disability and other injuries all prior to his death on January 28, 2011.

54.     As a direct and proximate result of the death of Patrick Burns, his estate also incurred medical, funeral and burial expenses in excess of $75,000.00.

**WHEREFORE**, Plaintiff Richard Burns, Executor of the Estate of Patrick Burns, deceased, prays for judgment against Defendants in an amount over Seventy-Five Thousand Dollars ($75,000.00) in such sum which is fair and reasonable, for punitive damages against the individually named Sheriff's deputies and Unidentified Sangamon County Sheriff's deputies only and not against the other Defendants, for Plaintiff's costs incurred and expended herein, and for such further and other relief this Court deems just and proper.

## COUNT V

### STATE CLAIM FOR WRONGFUL DEATH - LIFESTAR AMBULANCE

55.     Plaintiff incorporates by reference as if fully set forth herein, each and every allegation contained in all paragraphs and subparagraphs hereinabove.

56.     Decedent Patrick Burns was a resident of the City of Springfield, Sangamon County, State of Illinois, as of the date of the occurrences described herein and as of the date of his death on January 28, 2010.

57.     Plaintiff Richard Burns is the appointed Executor of the Estate of Patrick Burns and is the surviving brother of Patrick Burns.

58.     At all times relevant hereto, Defendant Lifestar Ambulance Service, Inc. was and is an Illinois corporation doing business in Sangamon County as Springfield Lifestar Ambulance or otherwise, and has held itself out as a provider of Emergency Medical Technicians and emergency medical care as well as ambulance services.

59.     At all times relevant hereto, Defendant Jamie Rompot was an Emergency Medical Technician licensed in Illinois and holding his or herself out as a competent EMT professional to the public and to plaintiff's decedent in particular.

60.     At all times relevant hereto, Defendant Barbara Guffey was a crew member on the Lifestar ambulance and held herself out as an Emergency Medical Technician a competent EMT professional to the public and to plaintiff's decedent in particular.

61.     At all times relevant hereto, Defendant Lifestar Ambulance Services acted by and through its officers, employees, agents or apparent agents including without limitation Jamie Rompot and Barbara Guffey, who at all times were acting within the scope of their employment or agency.

62.     On or about January 23, 2010, Defendant Lifestar Ambulance received a request for an ambulance due to an emergency situation, and Defendant dispatched an ambulance with crew members Rompot and Guffey at approximately 06:24 to proceed to Wolf and North Grand in Springfield, Illinois.

63.     Near said location, Defendant Lifestar Ambulance's crew encountered Plaintiff's decedent, Patrick Burns who was believed to have suffered an adverse drug reaction and to have been roughly subdued by police and to have suffered greater than 15 taser shocks.

64.     At that same time and place, Defendant Lifestar Ambulance's crew noted that Patrick Burns had been handcuffed with his hands and feet behind him in what is commonly called a "hog-tied" position.

65.     At approximately 06:32, Defendant Lifestar Ambulance's crew placed Patrick Burns in their ambulance on a stretcher. At that same time and place, Defendants, and each of them, owed a duty to Patrick Barnes to provide the emergency medical services such as a competent and reasonable EMT or ambulance crew would provide under the circumstances until the patient was properly handed off to an emergency room.

66.     At approximately 06:40, Defendant Lifestar Ambulance's crew began to transport Patrick Burns to the Emergency Room at Springfield Memorial Hospital.  Burns was conscious, active and moving at that time.

67.     At approximately 06:43 Defendant's ambulance crew notified the Emergency Room staff by radio that their patient was coming in and was suspected of being under the influence of drugs, had been tazed, and was extremely loud as well as handcuffed.

68.     At approximately 06:46, Defendant's ambulance arrived at the Emergency Room. Burns was conscious, active and moving at that time, but was noted to have become "subdued" and his eyes were slow to react while being wheeled into the ER facility.

69.     At approximately 06:53, patient Patrick Burns was first seen by Emergency Room personnel, who found him asystolic and not breathing.

70.     At approximately 07:59, the Defendant's crew received the signature of Betty Retherford, indicating that Springfield Memorial accepted responsibility for Patrick Burns from Defendant's crew, sometimes referred to as the "hand-off" of this patient.

71.     Defendant Lifestar Ambulance committed one or more of the following acts or omissions which were wanton, willful, or exhibited a reckless disregard for the safety of others:

a)      Defendant failed to adequately notify the emergency room personnel of the condition of the patient, and/or failed to indicate the need to meet the patient promptly upon arrival;

b)      Defendant failed to properly or adequately monitor Patrick Burns;

c)      Defendant failed to monitor or treat Patrick Burns when he became subdued and his eyes became slow to react;

d)      Defendant placed or transported Patrick Burns on his belly in a hogtied position;

e)      Defendant placed or transported Patrick Burns on his belly (supine position) in a hogtied position when Defendant's EMTs knew of his recent trauma and likely drug use;

f)      Defendant allowed Patrick Barnes to remain on his belly (supine position) in a hogtied position after he became subdued and his eyes became slow to react;

g)      Defendant allowed Patrick Barnes to remain on his belly (supine position) in a hogtied position for approximately 7 minutes after entering the emergency department at Springfield Memorial Hospital;

h)      Defendant allowed Patrick Barnes to remain on his belly (supine position) in a hogtied position for approximately 7 minutes when it was apparent that the emergency room personnel could not or did not accept the hand-off of this patient for that period;

i)      Defendant failed to adequately monitor or treat Patrick Barnes in the approximately 7 minutes before he was seen by the emergency department personnel;

j)      Defendant failed to adequately notify the emergency personnel of the decline of the condition of Patrick Barnes, and particularly -without limitation- that the patient had stopped breathing, that his heart had stopped beating, and/or that he was being kept hog-tied on his belly.

k)      Defendant failed to adequately train or supervise its ambulance crews to meet the expected needs of emergency care and/or the state or national standards for such personnel.

l)      Defendant failed to provide properly trained or certified paramedics for its ambulance services.

72.     The preceding acts or omissions, and each of them, was done with reckless disregard for the safety and/or health of Plaintiff's decedent and/or was wanton, willful, or done with intention or recklessly with knowledge of impending or expected danger to the life or health of decedent, or with a failure to exercise ordinary care to prevent such injury or danger, or a reckless or careless failure to discover danger to decedent when the same could have been discovered and/or prevented through ordinary care or the exercise of the standard of care of an ordinarily safe and competent professional.

73.     As a direct and proximate result of one or more of the aforesaid wanton, willful or reckless acts or omissions, Patrick Barnes was caused to suffer extreme physical and mental pain, asystole, inability to breathe, and death.

74.     As a direct and proximate result of one or more of the aforesaid wanton, willful, or reckless acts or omissions and the death of Patrick Barnes, the next of kin of Patrick Barnes suffered the loss of his support, care, comfort and society, grief and any or all losses contemplated under 740 ILCS 180/2.

**WHEREFORE**, Plaintiff Richard Burns, Executor of the Estate of Patrick Burns, deceased, prays for judgment against Defendant Lifestar Ambulance Service, Inc. in an amount over Seventy-Five Thousand Dollars ($75,000.00) in such sum which is fair and reasonable, for Plaintiff's costs incurred and expended herein, and for such further and other relief this Court deems just and proper.

## COUNT VI

### STATE CLAIM FOR WRONGFUL DEATH -JAMIE ROMPOT

75.     Plaintiff incorporates by reference as if fully set forth herein, each and every allegation contained in all paragraphs and subparagraphs hereinabove.

76.     Decedent Patrick Burns was a resident of the City of Springfield, Sangamon County, State of Illinois, as of the date of the occurrences described herein and as of the date of his death on January 28, 2010.

77.     Plaintiff Richard Burns is the appointed Executor of the Estate of Patrick Burns and is the surviving brother of Patrick Burns.

78.     At all times relevant hereto, Defendant Lifestar Ambulance Service, Inc. was and is an Illinois corporation doing business in Sangamon County as Springfield Lifestar Ambulance or otherwise, and has held itself out as a provider of Emergency Medical Technicians and emergency medical care as well as ambulance services.

79.     At all times relevant hereto, Defendant Jamie Rompot was an Emergency Medical Technician licensed in Illinois and holding his or herself out as a competent EMT professional to the public and to plaintiff's decedent in particular.

80.     At all times relevant hereto, Defendant Barbara Guffey was a crew member on the Lifestar ambulance and held herself out as an Emergency Medical Technician a competent EMT professional to the public and to plaintiff's decedent in particular.

81.     At all times relevant hereto, Defendant Lifestar Ambulance Services acted by and through its officers, employees, agents or apparent agents including without limitation Jamie Rompot and Barbara Guffey, who at all times were acting within the scope of their employment or agency.

82.     On or about January 23, 2010, Defendant Lifestar Ambulance received a request for an ambulance due to an emergency situation, and Defendant dispatched an ambulance with crew members including Defendants Rompot and Guffey at approximately 06:24 to proceed to Wolf and North Grand in Springfield, Illinois.

83.     Near said location, Defendant Lifestar Ambulance's crew encountered Plaintiff's decedent, Patrick Burns who was believed to have suffered an adverse drug reaction and to have been roughly subdued by police and to have suffered greater than 15 taser shocks.

84.     At that same time and place, Defendant Lifestar Ambulance's crew noted that Patrick Burns had been handcuffed with his hands and feet behind him in what is commonly called a "hog-tied" position.

85.     At approximately 06:32, Defendant Lifestar Ambulance's crew placed Patrick Burns in their ambulance on a stretcher. At that same time and place, Defendants, and each of them, owed a duty to Patrick Barnes to provide the emergency medical services such as a competent and reasonable EMT or ambulance crew would provide under the circumstances until the patient was properly handed off to an emergency room.

86.     At approximately 06:40, Defendant Lifestar Ambulance's crew began to transport Patrick Burns to the Emergency Room at Springfield Memorial Hospital.  Burns was conscious, active and moving at that time.

87.     At approximately 06:43 Defendant's ambulance crew notified the Emergency Room staff by radio that their patient was coming in and was suspected of being under the influence of drugs, had been tazed, and was extremely loud as well as handcuffed.

88.    At approximately 06:46, Defendant's ambulance arrived at the Emergency Room. Burns was conscious, active and moving at that time, but was noted to have become "subdued" and his eyes were slow to react while being wheeled into the ER facility.

89.    At approximately 06:53, patient Patrick Burns was first seen by Emergency Room personnel, who found him asystolic and not breathing.

90.    At approximately 07:59, the Defendant's crew received the signature of Betty Retherford, indicating that Springfield Memorial accepted responsibility for Patrick Burns from Defendant's crew, sometimes referred to as the "hand-off" of this patient.

91.    Defendant Jamie Rompot committed one or more of the following acts or omissions which were wanton, willful, or exhibited a reckless disregard for the safety of others:

a)    Defendant failed to adequately notify the emergency room personnel of the condition of the patient, and/or failed to indicate the need to meet the patient promptly upon arrival;

b)    Defendant failed to properly or adequately monitor Patrick Burns;

c)    Defendant failed to monitor or treat Patrick Burns when he became subdued and his eyes became slow to react;

d)    Defendant placed or transported Patrick Burns on his belly in a hogtied position;

e)    Defendant placed or transported Patrick Burns on his belly (supine position) in a hogtied position when Defendant's EMTs knew of his recent trauma and likely drug use;

f)    Defendant allowed Patrick Barnes to remain on his belly (supine position) in a hogtied position after he became subdued and his eyes became slow to react;

g)      Defendant allowed Patrick Barnes to remain on his belly (supine position) in a hogtied position for approximately 7 minutes after entering the emergency department at Springfield Memorial Hospital;

h)      Defendant allowed Patrick Barnes to remain on his belly (supine position) in a hogtied position for approximately 7 minutes when it was apparent that the emergency room personnel could not or did not accept the hand-off of this patient for that period;

i)      Defendant failed to adequately monitor or treat Patrick Barnes in the approximately 7 minutes before he was seen by the emergency department personnel;

j)      Defendant failed to adequately notify the emergency personnel of the decline of the condition of Patrick Barnes, and particularly -without limitation- that the patient had stopped breathing, that his heart had stopped beating, and/or that he was being kept hog-tied on his belly.

92.     The preceding acts or omissions, and each of them, was done with reckless disregard for the safety and/or health of Plaintiff's decedent and/or was wanton, willful, or done with intention or recklessly with knowledge of impending or expected danger to the life or health of decedent, or with a failure to exercise ordinary care to prevent such injury or danger, or a reckless or careless failure to discover danger to decedent when the same could have been discovered and/or prevented through ordinary care or the exercise of the standard of care of an ordinarily safe and competent professional.

93.     As a direct and proximate result of one or more of the aforesaid wanton, willful or reckless acts or omissions, Patrick Barnes was caused to suffer extreme physical and mental pain, asystole, inability to breathe, and death.

94.     As a direct and proximate result of one or more of the aforesaid wanton, willful, or reckless acts or omissions and the death of Patrick Barnes, the next of kin of Patrick Barnes suffered

the loss of his support, care, comfort and society, grief andand any or all losses contemplated under 740 ILCS 180/2.

   **WHEREFORE**, Plaintiff Richard Burns, Executor of the Estate of Patrick Burns, deceased, prays for judgment against Defendant Jamie Rompot in an amount over Seventy-Five Thousand Dollars ($75,000.00) in such sum which is fair and reasonable, for Plaintiff's costs incurred and expended herein, and for such further and other relief this Court deems just and proper

## COUNT VII

### STATE CLAIM FOR WRONGFUL DEATH -BARBARA GUFFEY

95.  Plaintiff incorporates by reference as if fully set forth herein, each and every allegation contained in all paragraphs and subparagraphs hereinabove.

96.  Decedent Patrick Burns was a resident of the City of Springfield, Sangamon County, State of Illinois, as of the date of the occurrences described herein and as of the date of his death on January 28, 2010.

97.  Plaintiff Richard Burns is the appointed Executor of the Estate of Patrick Burns and is the surviving brother of Patrick Burns.

98.  At all times relevant hereto, Defendant Lifestar Ambulance Service, Inc. was and is an Illinois corporation doing business in Sangamon County as Springfield Lifestar Ambulance or otherwise, and has held itself out as a provider of Emergency Medical Technicians and emergency medical care as well as ambulance services.

99.  At all times relevant hereto, Defendant Jamie Rompot was an Emergency Medical Technician licensed in Illinois and holding his or herself out as a competent EMT professional to the public and to plaintiff's decedent in particular.

100.    At all times relevant hereto, Defendant Barbara Guffey was a crew member on the Lifestar ambulance and held herself out as an Emergency Medical Technician a competent EMT professional to the public and to plaintiff's decedent in particular.

101.    At all times relevant hereto, Defendant Lifestar Ambulance Services acted by and through its officers, employees, agents or apparent agents including without limitation Jamie Rompot and Defendant Barbara Guffey, who at all times were acting within the scope of their employment or agency.

102.    On or about January 23, 2010, Defendant Lifestar Ambulance received a request for an ambulance due to an emergency situation, and Defendant dispatched an ambulance with crew members Rompot and Defendant Guffey at approximately 06:24 to proceed to Wolf and North Grand in Springfield, Illinois.

103.    Near said location, Defendant Lifestar Ambulance's crew encountered Plaintiff's decedent, Patrick Burns who was believed to have suffered an adverse drug reaction and to have been roughly subdued by police and to have suffered greater than 15 taser shocks.

104.    At that same time and place, Defendant Lifestar Ambulance's crew noted that Patrick Burns had been handcuffed with his hands and feet behind him in what is commonly called a "hog-tied" position.

105.    At approximately 06:32, Defendant Lifestar Ambulance's crew placed Patrick Burns in their ambulance on a stretcher.  At that same time and place, Defendants, and each of them, owed a duty to Patrick Barnes to provide the emergency medical services such as a competent and reasonable EMT or ambulance crew would provide under the circumstances until the patient was properly handed off to an emergency room.

106.     At approximately 06:40, Defendant Lifestar Ambulance's crew began to transport Patrick Burns to the Emergency Room at Springfield Memorial Hospital. Burns was conscious, active and moving at that time.

107.     At approximately 06:43 Defendant's ambulance crew notified the Emergency Room staff by radio that their patient was coming in and was suspected of being under the influence of drugs, had been tazed, and was extremely loud as well as handcuffed.

108.     At approximately 06:46, Defendant's ambulance arrived at the Emergency Room. Burns was conscious, active and moving at that time, but was noted to have become "subdued" and his eyes were slow to react while being wheeled into the ER facility.

109.     At approximately 06:53, patient Patrick Burns was first seen by Emergency Room personnel, who found him asystolic and not breathing.

110.     At approximately 07:59, the Defendant's crew received the signature of Betty Retherford, indicating that Springfield Memorial accepted responsibility for Patrick Burns from Defendant's crew, sometimes referred to as the "hand-off" of this patient.

111.     Defendant Barbara Guffey committed one or more of the following acts or omissions which were wanton, willful, or exhibited a reckless disregard for the safety of others:

a)     Defendant failed to adequately notify the emergency room personnel of the condition of the patient, and/or failed to indicate the need to meet the patient promptly upon arrival;

b)     Defendant failed to properly or adequately monitor Patrick Burns;

c)     Defendant failed to monitor or treat Patrick Burns when he became subdued and his eyes became slow to react;

d)     Defendant placed or transported Patrick Burns on his belly in a hogtied position;

e)       Defendant placed or transported Patrick Burns on his belly (supine position) in a hogtied position when Defendant's EMTs knew of his recent trauma and likely drug use;

f)       Defendant allowed Patrick Barnes to remain on his belly (supine position) in a hogtied position after he became subdued and his eyes became slow to react;

g)       Defendant allowed Patrick Barnes to remain on his belly (supine position) in a hogtied position for approximately 7 minutes after entering the emergency department at Springfield Memorial Hospital;

h)       Defendant allowed Patrick Barnes to remain on his belly (supine position) in a hogtied position for approximately 7 minutes when it was apparent that the emergency room personnel could not or did not accept the hand-off of this patient for that period;

i)       Defendant failed to adequately monitor or treat Patrick Barnes in the approximately 7 minutes before he was seen by the emergency department personnel;

j)       Defendant failed to adequately notify the emergency personnel of the decline of the condition of Patrick Barnes, and particularly -without limitation- that the patient had stopped breathing, that his heart had stopped beating, and/or that he was being kept hog-tied on his belly.

112.    The preceding acts or omissions, and each of them, was done with reckless disregard for the safety and/or health of Plaintiff's decedent and/or was wanton, willful, or done with intention or recklessly with knowledge of impending or expected danger to the life or health of decedent, or with a failure to exercise ordinary care to prevent such injury or danger, or a reckless or careless failure to discover danger to decedent when the same could have been discovered and/or prevented through ordinary care or the exercise of the standard of care of an ordinarily safe and competent professional.

113.    As a direct and proximate result of one or more of the aforesaid wanton, willfull or reckless acts or omissions, Patrick Barnes was caused to suffer extreme physical and mental pain, asystole, inability to breathe, and death.

114.    As a direct and proximate result of one or more of the aforesaid wanton, willful, or reckless acts or omissions and the death of Patrick Barnes, the next of kin of Patrick Barnes suffered the loss of his support, care, comfort and society, grief and any or all losses contemplated under 740 ILCS 180/2.

**WHEREFORE**, Plaintiff Richard Burns, Executor of the Estate of Patrick Burns, deceased, prays for judgment against Defendant Barbara Guffey in an amount over Seventy-Five Thousand Dollars ($75,000.00) in such sum which is fair and reasonable, for Plaintiff's costs incurred and expended herein, and for such further and other relief this Court deems just and proper

OCHS & KLEIN, ATTORNEYS, P.C.


By:    _/s/ James C. Ochs_____
           JAMES C. OCHS, ARDC #6141902
           149 N. Meramec, 2nd Floor
           Clayton, MO 63105
           Telephone: (314) 727-2111
           Facsimile: (314) 727-2110
           **jochs@ochsklein.com**

           ATTORNEY FOR PLAINTIFF