# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| Estate of PATRICK BURNS, deceased, by ) <br> Richard Burns, Executor, ) <br> ) <br>       Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> NEIL WILLIAMSON, as Sheriff of ) <br> Sangamon County, in his official capacity, ) <br> et al., ) <br> ) <br>       Defendants. ) | No. 11-3020 |

## **OPINION**

SUE E. MYERSCOUGH, U.S. District Judge.

This cause is before the Court on the Motion to Dismiss (d/e 66) filed by Defendants LifeStar Ambulance Service, Inc. (LifeStar), Jamie Rompot, and Barbara Guffey (collectively referred to as the Ambulance Defendants). The Ambulance Defendants assert that the Counts against them should be dismissed because Plaintiff failed to file a sufficient report pursuant to 735 ILCS 5/2-622(a)(1). For the reasons that follow, this Court finds the report sufficient and the Motion is DENIED.

# I.  FACTS

Plaintiff originally brought this lawsuit, pursuant to 42 U.S.C. § 1983 and state law, against Sangamon County and several Sheriff's deputies alleging cruel and unusual treatment of and excessive force against decedent Patrick Burns.  In February 2012, Plaintiff filed a Second Amended Complaint which named as defendants, for the first time, the Ambulance Defendants.  The Counts against the Ambulance Defendants alleged state law claims for wrongful death.  See Sec. Am. Compl. Count V (LifeStar); Count VI (Rompot); Count VII (Guffey) (d/e 47).

Specifically, Plaintiff alleged that on January 23, 2010, LifeStar received a request for an ambulance.  Sec. Am. Compl. ¶¶ 6282, 102.  LifeStar dispatched an ambulance with crew members Rompot and Guffey, both of whom were emergency medical technicians (EMT).  Sec. Am. Compl. ¶¶ 59, 60, 62, 79, 80, 82, 99, 100, 102.  The LifeStar ambulance crew encountered decedent Burns, "who was believed to have suffered an adverse drug reaction, and to have been roughly subdued by police and to have suffered greater than 15 taser shocks."  Sec. Am. Compl. ¶¶ 63, 83, 103. Burns was handcuffed with his hands and feet behind him (hogtied).   Sec. Am. Compl. ¶¶ 64, 84, 104.  Plaintiff alleged that "[w]hen Defendant Deputies finally allowed ambulance personnel to tend to the injuries Patrick Burns sustained in the incident . . . they would not permit the ambulance

personnel to place Patrick Burns in the proper restraints for transport in the ambulance and instead kept Patrick Burns 'hogtied' and in the prone position." Sec. Am. Compl. ¶ 10.

Plaintiff further alleged that the ambulance crew placed Burns in the ambulance and transported him to the emergency room at "Springfield Memorial Hospital." Sec. Am. Compl. ¶ 65, 66, 85, 86, 105, 106. "Defendant Deputies Osmer and Roderick rode with Patrick Burns in the ambulance on the way to the hospital and refused to allow ambulance personnel to properly treat Patrick Burns and properly position him to maintain his airway and monitor his vitals." Sec. Am. Compl. ¶ 20.

At 06:46, the ambulance arrived at the emergency room. See Sec. Am. Compl. ¶¶ 68, 88, 108. "Burns was conscious, active, and moving at that time, but was noted to have become 'subdued' and his eyes were slow to react while being wheeled into the emergency room." Id. At 06:53, Burns was first seen by emergency room personnel, "who found him asystolic and not breathing." Sec. Am. Compl. ¶¶ 69, 89, 109. At 07:59, "Springfield Memorial" accepted responsibility for Burns (sometimes referred to as the hand-off of the patient). Sec. Am. Compl. ¶¶ 70, 90, 110. Burns could not be revived. Sec. Am. Compl. ¶ 21. He remained on life support and died in the hospital on January 28, 2010. Sec.

Am. Compl. ¶ 22.

Plaintiff alleged that the Ambulance Defendants committed the following acts or omissions which were wanton, were wilful, or exhibited a reckless disregard for the safety of others: (a) failing to adequately notify the emergency room personnel of the condition of the patient and/or failing to indicate the need to meet the patient promptly upon arrival; (b) failing to properly or adequately monitor Burns; (c) failing to monitor or treat Burns when he became subdued and his eyes became slow to react; (d) placing or transporting Burns on his belly in a hogtied position; (e) placing or transporting Burns on his belly in a hogtied position when the EMTs knew of Burns' recent trauma and likely drug use; (f) allowing Burns to remain on his belly in a hogtied position after he became subdued and his eyes became slow to react; (g) allowing Burns to remain on his belly in a hogtied position for approximately seven minutes after entering the emergency department; (h) allowing Burns to remain on his belly in a hogtied position for approximately seven minutes when it became apparent that the emergency room personnel could not or did not accept the hand-off of the patient for that period; (i) failing to adequately monitor or treat Burns in the approximately seven minutes before he was seen by emergency room personnel; (j) failing to adequately notify the emergency personnel of the decline of the condition of

Burns, including that he stopped breathing, his heart stopped beating, and/or that he was being kept hogtied on his belly. Sec. Am. Compl. ¶¶ 71, 91, 111 (a) through (j).

In addition, Plaintiff alleged that LifeStar (k) failed to adequately train or supervise its ambulance crews to meet the expected needs of emergency care and/or the state or national standards for such personnel; and (l) failed to properly provide trained or certified paramedics for its ambulance services. Sec. Am. Compl. ¶ 71 (k),(l).

Plaintiff's counsel filed for each Ambulance Defendant an affidavit, pursuant to 735 ILCS 5/2-622, asserting that counsel consulted and reviewed the facts of the case with a health care professional who determined there is a reasonable and meritorious cause for filing the action. See Affidavits (d/e 46-2, 46-3, 46-4). Plaintiff also attached a report (d/e 46-5) but later filed a supplemental report (d/e 69-1). That supplemental report, authored by John F. Conlon, DO, CPE, MBA, provides as follows:

> Again, I am a physician licensed to practice medicine in DE, NJ and PA, and I am currently in the practice of emergency medicine. I have supervised emergency care for 12 years, and am familiar with the type of patient and emergency presented in this case. I have reviewed the records concerning care provided to Patrick Burns, including the ambulance records, coroner report, statement of EMTs, and the medical records of

> Springfield Memorial Hospital regarding the transport, arrival, intake, and initial care to this patient. There is a known danger when a medical care provider is dealing with a patient suspected of extreme drug reaction, and after being traumatically subdued and restrained in a "hog-tied" manner, of the possibility of death or serious injury due to respiratory distress or arrest when the patient is left face down. The standard of care requires that the responsible care provider keep the patient on

their side or otherwise off the belly, and/or carefully monitor their respiration and mental condition. Although the patient was apparently placed on his side in the ambulance, this was apparently not done after arrival at the hospital. This is well established, and keeping a patient in this condition on his belly without monitoring was unreasonable and would be expected to have the result it did. After the review, it is my opinion that until a formal hand off from the EMTs to the ER occurred (a verbal report from EMTs to staff and the patient being moved to a hospital stretcher), the responsibility for this patient remained with the EMTs. From the record, it appears the first time the ER staff encountered the patient, he was asystolic and not breathing. Therefore, based on the record I currently have, I have the opinion that there is a reasonably and meritorious basis to proceed with a suit against the EMT or ambulance personnel who are identified in the records as Jamie Rompot and Barbara Guffey, but otherwise whoever had the patient in their control while he was hog-tied and on his belly and stopped breathing. I reserve the right to alter any of these opinions if I am provided additional or contradictory information in the future.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). For purposes of the motion, this Court must accept as true all well-pleaded allegations contained in the complaint and draw all inferences in the light most favorable to the non-moving party. <u>Estate of Davis v. Wells Fargo Bank</u>, 633 F.3d 529, 533 (7th Cir. 2011). To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).  That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis.  Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This means that (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level."  EEOC v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007).

III.  ANALYSIS

The Ambulance Defendants assert that Plaintiff was required to comply with section 2-622 and provide a sufficient affidavit and health care report.  See 735 ILCS 5/2-622(a) (West 1998).[1]  According to the Ambulance Defendants, the health care report submitted by Plaintiff

---

[1] The Court cites to the 1998 version of the statute, but notes that the only effect of Public Act 90-579, effective May 1, 1998, was to "add naprapaths to the list of health professions set forth in the pre-1995 version of section 2-622(a)(1)."  Cookson v. Price, 239 Ill. 2d 339, 341 (2010) (noting that "except for the naprapath language, the statute now reads as it did when amended in 1989 by Public Act 86-646"); O'Casek v. Children's Home & Aid Society of Ill., 229 Ill. 2d 421, 447 (2008) (finding that Public Act 90-579, effective May 1, 1998, added naprapaths to the coverage of section 2-622 and did not reenact the version of section 2-622 that was held invalid in Best v. Taylor Mach. Works, 179 Ill. 2d 367 (1997); see also Best, 179 Ill. 2d at 467 (finding that Public Act 89-7 –which amended § 2-622– violated the Illinois Constitution and that "the legislation must fail in toto"); Lebron v. Gottlieb Mem. Hosp., 237 Ill. 2d 217, 250 (2010) (finding Public Act 94-677, § 995, eff. August 25, 2005 invalid and void in its entirety; section 2-622 was one of the provisions amended by Public Act 94-677); Christmas v. Dr. Donald W. Hugar, Ltd., 409 Ill. App. 3d 91, 94 (2011) (citing 1998 version, but noting that the specific language at issue in the appeal had not changed).

was insufficient because the report (1) does not adequately discuss the deficiencies in the health care rendered by each defendant; and (2) does not clearly identify the reasons for the health care professional's determination that there is a meritorious cause of action. The Ambulance Defendants also point to specific subparagraphs of the Second Amended Complaint that are either not addressed by the report or conflict with the report. See Defs. Mem. p. 10 (noting that the report does not address portions of the allegations contained in subparagraphs (a), (b), (c), (g), (h), (i) and (j) and contradicts paragraphs (d), (e), and (f) of ¶¶ 71, 91, 111).

In response, Plaintiff assumes "that the provisions of state law in 735 ILCS 5/2-622 are applicable, noting that there is some dispute on this point." Pl. Mem., p. 3 n. 1 (noting that at least one district court has rejected the notion that section 2-622 is substantive law applicable in federal court and also noting that many of the allegations against the individual defendants involve actions which may have been non-medical). Plaintiff asserts that the issue need not be resolved because the report is sufficient. Specifically, Plaintiff asserts that (1) section 2-622 does not require that the allegations of the complaint track the contentions made in the health care report; and (2) a report is sufficient even if it does not specifically mention a particular defendant but addresses deficiency in care in general. This Court agrees with Plaintiff.

Section 2-622 requires that, in any action "in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," the plaintiff's attorney must file an affidavit stating that the affiant has consulted with a health professional in whose opinion there is a "reasonable and meritorious cause for filing of such action." 735 ILCS 5/2-622(a) (West 1998). A written report by the health professional must be attached to the affidavit. Id. The written report must clearly identify the plaintiff and the "reasons for the

reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists." Id.

"The written health professional report required by section 2-622(a)(1) is a pleading requirement designed to reduce the number of frivolous medical malpractice lawsuits at an early stage before litigation expenses mount." Sullivan v. Edward Hosp., 209 Ill. 2d 100, 116-17 (2004). The report "establishes only that the plaintiff has a meritorious claim and, therefore, reasonable grounds for pursuing the action." Id. at 117. The health professional's report is liberally construed in favor of the plaintiff. Cutler v. Northwest Suburban Community Hosp., Inc., 405 Ill. App. 3d 1052, 1064 (2010); Sherrod v. Lingle, 223 F.3d 605, 613-14 (7th Cir. 2000). The report herein, when liberally construed, is sufficient.

In the report, Dr. Conlon discussed the appropriate standard of care, i.e. "that the responsible care provider keep the patient on their side or otherwise off the belly, and/or carefully monitor their respiration and mental condition." Dr. Conlon stated that the patient was apparently not kept on his side at the hospital and was not monitored by the EMTs, who Dr. Conlon noted were identified in the records as Rompot and Guffey. This is sufficient as to Rompot and Guffey. See, e.g., Hull v. Southern Illinois Hosp. Serv., 356 Ill. App. 3d 300, 307 (2005) (finding the report sufficiently identified the reasons for the physician's determination that the cause of action was meritorious where the physician discussed the appropriate standard of care and how the defendant deviated from the standard of care); see also Premo v. Falcone, 197 Ill. App. 3d 625, 632 (1990) ("[A] single medical report in a medical malpractice case against multiple defendants" may be sufficient if it is broad enough to cover each defendant, adequately discusses the deficiency in the medical care provided, and establishes that a

reasonable and meritorious cause exists for filing the action).

The case cited by the Ambulance Defendants, Mueller v. North Suburban Clinic, Ltd., 299 Ill. App. 3d 568, 577 (1998), is distinguishable. In that case, the report did not indicate the specific involvement of three physicians in the plaintiff's medical treatment. Here, Dr. Conlon stated that the EMTs responsible for Burns (whom he identified as Rompot and Guffey) left Burns face down at the hospital and failed to monitor his respiration and mental condition until responsibility for Burns passed to the emergency room personnel.

The Ambulance Defendants further argue that Dr. Conlon does not discuss all of the alleged misconduct alleged in the Second Amended Complaint. However, the "health professional's report establishes only that the plaintiff has a meritorious claim and, therefore, reasonable grounds for pursuing the action." Sullivan, 209 Ill. 2d at 117. "The requirements of section 2-622 do not rise to the level of substantive elements of a claim for medical malpractice." Id.; see also Garrison v. Choh, 308 Ill. App. 3d 48, 57 (1999) (noting that the legislature never intended for the attorney affidavit and health care professional's report to be considered part of the complaint for all purposes). The report supports a claim against Rompot and Guffey, even if it does not address all of the allegations against them. If there is ultimately no factual support for the subparagraphs of Plaintiff's claims against the Ambulance Defendants, then that can be "established on a motion for summary judgment, not be a technical attack on the preliminary report attached to the complaint." Steinberg v. Dunseth, 276 Ill. App. 3d 1038, 1049 (1995).

As to LifeStar, the Court notes that the report does not specifically address LifeStar. This deficiency is not necessarily dispositive. When a defendant's liability is wholly vicarious, a separate report need not be filed for that defendant if a report "in compliance with section 2-622

has been filed as to the individuals whose conduct forms the basis of the vicarious liability." Schroeder v. Northwest Community Hosp., 371 Ill. App. 3d 584, 595 (2007).

In this case, Plaintiff alleged LifeStar was both derivatively liable (based on the conduct of its employees) as well as liable for its own conduct of allegedly failing to train or supervise its ambulance crews and failing to provide properly trained or certified paramedics. See Sec. Am. Compl. ¶ 71(k), (l). Therefore, the Schroder case would not appear applicable, as it speaks to cases where a defendant's liability is wholly derivative.

Nonetheless, as noted above, "[t]he requirements of section 2-622 do not rise to the level of substantive elements of a claim for medical malpractice." Sullivan, 209 Ill. 2d at 117 ("The health professional's report establishes only that the plaintiff has a meritorious claim and, therefore, reasonable grounds for pursuing the action"). Because the report is sufficient as to Rompot and Guffey, the report is sufficient as to LifeStar, at least as to the derivative liability. As such, the report supports a claim against LifeStar. As stated in Steinberg, 276 Ill. App. 3d at 1049:

> The section 2-622 report is a ticket which plaintiff must possess in order to file his complaint. If plaintiff has the ticket, if there has been minimal compliance [citation] with section 2-622 of the Code, the case should move on to summary judgment or trial.

Plaintiff has minimally complied here.

## IV. CONCLUSION

For the reasons stated, the Motion to Dismiss [66] is DENIED. The Ambulance Defendants shall respond to the Second Amended Complaint on or before July 26, 2012.

ENTER: July 12, 2012

FOR THE COURT:

                                                    s/ Sue E. Myerscough
                                            SUE E. MYERSCOUGH
                                UNITED STATES DISTRICT JUDGE