J. H. BOWMAN M.D.
FORENSIC PATHOLOGY P.C.
PETERSBURG, ILLINOIS

AUTOPSY NUMBER
CC-26-10

CORONER
SUSAN BOONE

COUNTY OF JURISDICTION
SANGAMON

NAME: PATRICK J. BURNS   SEX: Male   AGE: 50   DOB: 3-22-59   RACE: Caucasian
RESIDENCE: 2362 Converse, Springfield, IL

OFFICIAL DATE/TIME OF DEATH: 1700 hrs on 1-28-10
PLACE OF DEATH: Memorial Medical Center, Floor 2C (ICU), Springfield, IL
DATE OF REPORT: 3-17-10
DATE OF AUTOPSY: 8:11 a.m. on 1-29-10
REPORT PREPARED BY: Jessica H. Bowman M.D.
AUTOPSY PERFORMED AT: St. John's Hospital, Springfield, IL

### FINAL AUTOPSY DATA SUMMARY
(Based upon all information and findings available on the date of this report)

Circumstances surrounding decedent's arrest
   a. Police contacted by a woman for break-in and assault
   b. Decedent's behavior characteristic of excited delirium

Toxicology
   a. Hospital admission drug screen positive for Cocaine
   b. Cocaine identified and confirmed in decedent's admission blood
   c. Admission blood Cocaine level = 195 ng/mL
   d. Admission urine confirmed positive for Cocaine and metabolite
   e. Post mortem nasal swabs confirmed positive for Cocaine

Traumatic injury
   a. Superficial bruising compatible with Taser marks, physical altercation and resistance against ankle and wrist restraints
   b. No trauma of the internal viscera of the thorax, abdomen, head or larynx

OPINION

In my opinion, the cause of death in this 50 year-old white male is due to excited delirium due to cocaine abuse.

### TOXICOLOGY

#### RESULTS FROM SPECIMENS COLLECTED BY MMC E.R. 1/23/2010

Blood ethanol: No detectable level
by head space gas chromatography

Blood drug screen: Cocaine identified by gas chromatography. COCAINE LEVEL = 195 NG/ML by gas chromatography; toxic level > 1,000 ng/mL. Fluoxetine (Prozac) identified by gas chromatography; Fluoxetine level = 182 ng/mL by gas chromatography; usual therapeutic range 50 – 480 ng/mL; lethal = or > 1,300 ng/mL. Bupropion (Wellbutrin) identified by gas chromatography. Bupropion level = 132 ng/mL; therapeutic 50 – 100 ng/mL; lethal = or > 4,000 ng/mL. No detectable level of other drugs identified by enzyme immunoassay, thin layer and gas chromatography.

Urine drug screen: Cocaine and/or Benzoylecgonine (Cocaine metabolite) identified by enzyme immunoassay screen and thin layer chromatography. Cocaine confirmed positive by gas chromatography/mass spectrometry. Delta-9-THC carboxylic acid (marijuana metabolite) identified by enzyme immunoassay and confirmed positive by gas chromatography/mass spectrometry. Fluoxetine and Buproprion metabolite identified by thin layer chromatography. No detectable level of other drugs identified by enzyme immunoassay and thin layer chromatography.

## RESULTS FROM AUTOPSY SPECIMENS COLLECTED 1/29/2010

Blood ethanol: No detectable level
Urine ethanol: No detectable level
Vitreous ethanol: No detectable level
by head space gas chromatography

Carboxyhemoglobin concentration: 1.4% hemoglobin saturation by cooximeter

Blood drug screen: Fluoxetine (Prozac) and Norfluoxetine identified by gas chromatography; Fluoxetine level = 524 ng/mL and Norfluoxetine level = 203 ng/mL, both by gas chromatography; usual therapeutic range 50 – 480 ng/mL, Norfluoxetine 50 – 450 ng/mL; lethal Fluoxetine level = or > 1,300 ng/mL; lethal Norfluoxetine level = or > 900 ng/mL. Bupropion (Wellbutrin) identified by gas chromatography. Bupropion level = 220 ng/mL; therapeutic = 50 – 100 ng/mL; lethal = or > 4,000 ng/mL. Phenytoin (Dilantin) identified by gas chromatography, Phenytoin level = 13.3 mcg/mL by turbidimetric immunoassay (Beckman); therapeutic = 10.0 – 20.0 mcg/mL No detectable level of other drugs identified by enzyme immunoassay, thin layer and gas chromatography.

Urine drug screen: Delta-9-THC carboxylic acid (marijuana metabolite) identified by enzyme immunoassay and confirmed positive by gas chromatography/mass spectrometry. Benzodiazepine metabolites identified by enzyme immunoassay only. Fluoxetine, Phenytoin, and Acetaminophen (Tylenol) identified by gas and/or thin layer chromatography. Fluoxetine and Phenytoin confirmed by gas chromatography/mass spectrometry. No detectable level of other drugs identified by enzyme immunoassay and thin layer chromatography.

Cyanide screen: Negative by colorimetric spot test.

Right and left nasal swabs: Cocaine confirmed POSITIVE by mass spectrometry.

Blood group and type: Group O, Rh positive

Antibodies to Human Immunodeficiency Virus: Non reactive

## EXTERNAL EXAMINATION

The decedent is received in a security sealed black body bag with a patient death discharge notice, an identification tag and a biohazard attention marker within which the decedent is wrapped in a sheet with a hospital chart present on his legs, wearing a hospital gown. There is neither clothing nor jewelry.

GENERAL: The body is that of a well developed, well nourished, white male adult, whose apparent age is greater than the given age of 50 years. The body, when nude, measures 66 inches and weighs 170 lbs. The body is cool to touch subsequent to refrigeration. Rigor mortis is well developed in the muscles of mastication and extremities. Livor mortis is red-purple, posterior and fixed.

SKIN: The skin is unremarkable with the exception of solar damage of the face, neck and upper extremities. Body hair is normal in amount and distribution.

HEAD: The scalp is atraumatic. The hairline is receding with marked thinning on the convexity. The scalp hair is extensively grey and 5.5 cm in length at the side of the head. The irides are hazel and there are no petechiae or jaundice in the bulbar or palpebral surfaces of the conjunctivae. The conjunctivae are congested. The nose is unremarkable. The mouth is unremarkable. The frenula of the lips are intact. The teeth are natural and in poor condition with long term absence of the right upper first two incisors. There is moustache hair compatible with three to four days duration of growth. There is beard hair compatible with a day or two duration of growth. The earlobes are not pierced.

NECK: The neck is externally unremarkable.

CHEST: The chest and breasts are symmetrical.

ABDOMEN: The abdomen is nondistended and unremarkable.

GENITALIA: The penis has a short foreskin and the testicles are descended into the scrotum. The anus and perineum are unremarkable.

EXTREMITIES: The upper and lower extremities are symmetrical.

BACK AND BUTTOCKS: The back and buttocks are unremarkable except for trauma.

EVIDENCE OF RECENT MEDICAL/SURGICAL INTERVENTION: There is a Foley catheter with attached catheter bag containing 830 mL of dark yellow urine. There is an IV line adjacent to the left antecubital fossa and an IV line dorsal surface of the right arm adjacent to the right antecubital fossa taped into place. There are cardiac monitor pads in the following locations: one in the left subclavian region, one over the right pectoralis region, one slightly to the right of the xiphoid process, and the other on the costophrenic margin left side. Adhesive compatible with prior monitor pad placement is noted on the anterior aspect of the left arm, the lateral aspect of the left pectoralis muscle, in two places on the torso left side and anterior to the right axilla. There is a gauze bandage over the inguinal region under which is a puncture wound compatible with prior IV line placement. There is an identification band on the decedent's left wrist. In addition to the puncture wound previously described in the right inguinal region, puncture wounds are noted in the left inguinal region with scant associated hemorrhage.

IDENTIFYING SCARS, MARKS AND TATTOOS: There is a 3.5 x 1.0 cm well healed scar just lateral to the right inguinal region. There are numerous tan-brown macular lesions present on the face, upper torso and upper extremities ranging from 0.1 to 0.5 cm in diameter. Superficial irregular scarring is noted over the patellae. In the mid-back region is a 4.5 x 1.5 cm café au lait spot.

EVIDENCE OF ORGAN REMOVAL FOR TRANSPLANTATION: None prior to autopsy.

EVIDENCE OF POSTMORTEM CHANGE: The external examination is not significantly limited by decomposition. Preservation is good in the absence of embalming.

EVIDENCE SUBMITTED: All items are sealed in appropriately labeled containers and submitted to the Criminal Investigation Officer as evidence.

## TRAUMATIC INJURY

EXTERNAL: There are numerous bruises over the torso and lower extremities, and circular abrasions around both wrists and both ankles characteristic of restraint. Some of the bruises as follows have anatomic features characteristic of probe Taser including one on the anterior aspect of the left shoulder above the axilla with an overall area of bruising of 5 cm and a central clearing of 0.8 cm with a scabbed area that is 0.1 and roughly triangular. A second mark with some characteristics of a Taser is on the lateral aspect of the right upper arm with a central roughly triangular defect that is 0.1 cm and surrounding it a 0.7 cm roughly square-like impression and an area of bruising with yellow discoloration that is 5 cm in maximal dimension. A third mark consists of an area of bruising with yellow coloration with the maximal dimension of 8 cm that has a roughly triangular scab formation in the center that is 0.3 cm in length. A surrounding square mark around this is not noted. A fourth mark is a right upper quadrant bruise that is 3.0 cm x 1.8 cm that has a roughly square-like bruise configuration that is 0.9 cm. Within this square like mark is a 0.1 cm roughly triangular scabbed over skin defect. A possible fifth mark consists of an area of bruising suggestive of a Taser mark with a central, somewhat irregular 1.0 cm area of red-purple bruising surrounded by yellow discoloration that is 4.0 cm is present to the left of the sternum roughly in the center of the pectoralis muscle. Five additional areas of bruising are noted as follows that may represent Taser marks but are not as characteristic: There are almost punctate areas of bruising on the lateral aspect of the left upper arm that are 0.6 and 1.0 cm. There is one below the axilla with a mark just above it; these are 0.5 and 1.5 cm in maximal dimensions. There is a scabbed over mark with some hemorrhage below the previously described bruise with associated Taser configuration that is 8 cm in maximal dimension. Bruising is noted in the antecubital fossae region (likely related to prior IV line placement) but also on the dorsal surface of both forearms, extensively on the posterior aspects of the legs and on the dorsal surfaces of the shins, characteristic of blunt force, either self inflicted or due to restraint. There is a sutured incision on the medial aspect of the right ankle that is 4.0 cm in length, 0.6 cm in width that is characteristic of struggle against a leg restraint device. On the medial aspect of the left leg are post mortem areas of indentation separated by 3 cm. There are abrasions around the patellae, right greater than left, and also of note are abrasions that are scabbed over on the knuckles of the right hand predominantly the first and second knuckles. There is bruising of the first and second knuckles of the right hand with associated swelling. Superficial abrasions are noted on the first knuckle of the left hand as well as the right hand.

INTERNAL: Upon opening the thorax and abdomen, subcutaneous hemorrhage is noted; however, there is no trauma of the deep musculature or internal viscera of the thorax and abdomen. There is some hemorrhage in both psoas muscle regions; however, evidence of multiple femoral line placements is present and the degree of hemorrhage is compatible with iatrogenic causation. Reflection of the scalp reveals hemorrhage in the right temporalis muscle; however, the skull is intact. Opening of the calvarium and removal of the brain reveals no trauma. The cranial fossa shows no fractures. Removal of the laryngeal apparatus reveals no trauma. Note: An artifactual incision during removal of the larynx was made at the junction of the right cornu of the hyoid bone with the mid-region. The tongue shows bite marks in the anterior region. Incisions of the back, buttock and thighs demonstrate contusion hemorrhage in the subcutaneous fat including the back, right side, buttocks and thighs. The deep musculature is free of injury.

## INTERNAL EXAMINATION

The internal examination is limited by decompositional change, including softening and darkening of the internal organs, and autolysis of glandular and mucosal-lined tissues.

BODY CAVITIES: The body wall fat measures 3.0 cm in thickness. The thoracic and abdominal organs are in their normal anatomic positions. The body cavities contain no adhesions or abnormal collections of fluid.

HEAD: The scalp, subscalpular area and skull are unremarkable. The brain weighs 1,320 gm. The dura and dural sinuses are unremarkable. There are no epidural, subdural or subarachnoid hemorrhages. There are no uncal, subfalcial, transtentorial or cerebellar tonsillar herniations. The leptomeninges are thin and delicate. The cerebral hemispheres are symmetrical, with an unremarkable gyral pattern. The cranial nerves and blood vessels are unremarkable. The pituitary gland is unremarkable. Sections through the cerebral hemispheres, brain stem and cerebellum are unremarkable. There are no hemorrhages in the deep white matter or the basal ganglia. The cerebral ventricles contain no blood.

NECK: The soft tissues and the prevertebral fascia are unremarkable. The hyoid bone and larynx are intact with the exception of an artifactual incision of the hyoid bone right side. There is no hemorrhage within the intrinsic muscles of the larynx. Evaluation of the tongue reveals bite marks in the anterior region. Palpation of the upper cervical spine through the foramen magnum reveals no displaced fractures.

CARDIOVASCULAR SYSTEM: The intimal surface of the aorta shows ulcerative atherosclerosis in the abdominal region. The aorta and its major branches and the great veins are normally distributed. The pericardium is unremarkable. The heart weighs 440 gm. The epicardium and endocardium are smooth, glistening and unremarkable. There are no thrombi in the atria or ventricles. The foramen ovale is closed. The coronary arterial system has a left diagonal branch and is narrowed by atherosclerotic plaque as follows: 40% focal occlusion of the left anterior descending coronary artery, 30% focal occlusion of the right coronary artery and no occlusion of the left diagonal coronary artery. The atrial and interventricular septa are intact. The cardiac valves are unremarkable. The myocardium is dark red-brown and firm, without focal abnormalities.

RESPIRATORY SYSTEM: The upper airway is unobstructed. The laryngeal mucosa is smooth and unremarkable. The right lung weighs 1,190 gm and the left lung weighs 880 gm. The pleural surfaces are smooth and shiny and markedly anthracotic. The lungs are normally lobulated. The pulmonary arteries contain no emboli. The major bronchi are unremarkable. Sectioning of the lungs discloses a dark red-blue, markedly congested, markedly edematous parenchyma.

HEPATOBILIARY SYSTEM: The liver weighs 1,990 gm and is covered by a smooth, glistening capsule. The parenchyma is dark red-brown and moderately congested. On sectioning, a 1.0 cm in diameter dark brown spongy lesion compatible with a hemangioma is identified. The gallbladder contains an estimated 20 mL of olive green bile and no calculi. The extrahepatic biliary ducts are unremarkable.

DIGESTIVE SYSTEM: The esophagus is grey and smooth with the exception of an area of reddening at the gastroesophageal junction compatible with erosive esophagitis. The stomach contains 90 mL of tan fluid. There are no tablets or capsules identified grossly. The gastric mucosa has attenuation of the rugal folds due to autolysis but there are no ulcers. The small and large intestines are externally unremarkable. The appendix is present in the right lower quadrant of the abdomen and is unremarkable. The pancreas is tan-pink, normally lobulated and unremarkable externally and on sectioning.